IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2018

## DERRICK CHAMBERS v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. 14-01027    Paula Skahan, Judge

No. W2017-01177-CCA-R3-PC

The Petitioner, Derrick Chambers, appeals from the denial of his petition for post-conviction relief, wherein he challenged the validity of his guilty plea to attempted first degree murder. On appeal, the Petitioner alleges that he received ineffective assistance from his trial counsel because trial counsel (1) "failed to adequately investigate, or prepare for trial, develop defenses, speak to witnesses, file motions, or meet with the [Petitioner] to prepare for trial"; (2) "failed to object to raise a statutory claim with respect to charging him with attempted murder by using a firearm and employing a firearm in the commission of the same offense"; and (3) coerced him into pleading guilty by providing incorrect advice. The Petitioner further contends that, but for trial "counsel's ineffective representation," he "would have received a greatly reduced sentence." After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Robert Brooks, Memphis, Tennessee, for the Appellant, Derrick Chambers.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
FACTUAL BACKGROUND

On February 25, 2014, the Shelby County Grand Jury charged the Petitioner with attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony, to wit: attempted first degree murder. See Tenn. Code Ann. §§ 39-12-101, -13-102, -13-202, -17-1324. Thereafter, the Petitioner pled guilty on July 13, 2015, to attempted first degree murder, and the remaining charges were dismissed. In exchange for his plea, he received a sentence of fifteen years as a Range I, standard offender to be served at eighty-five percent.

At the plea submission hearing, the prosecutor provided the following factual bases underlying the Petitioner's charges:

On or around October 6, 2013, officers of the Memphis Police Department responded to a shooting in the area of Dogwood and Barron, that is in Shelby County, Tennessee.

This victim, Jasper Woods, drove away from the scene at Dogwood and Barron after he was shot, several times, seeking medical attention. He drove himself to the fire station located on Getwell and Rhodes. Medical aid was being provided by a Memphis Fire Department, EMT personnel. Mr. Woods said Derrick was the person who was responsible for shooting him. He continued to say that someone named Derrick, or Little D, was the person responsible for shooting him. The victim was transported to The Med, in critical condition, with gunshot wounds to the face, arms, legs, back, chest[,] and testicles.

Officers responded to The Med where, the victim, Mr. Woods[,] stated again that someone he knew as Derrick lived in the area was the one who shot him. Officers found shell casings located at the scene at Dogwood and Barron.

On Monday, October 7th, the victim, Mr. Woods[,] provided a formal statement to the Memphis Police Officers stating that Derrick Chambers was the one who shot him.

After an investigation, Memphis Police Officers discovered that the person named Little D, was known as Derrick Chambers [the Petitioner], a photo of [the Petitioner] was placed in a photo lineup and he was identified by the victim.

Officers proceeded to 1115 Will . . . Scarlet . . . . They located [the Petitioner] at his residence, which is where his victim believed [the Petitioner] should have lived. [The Petitioner] was transported to felony

-2-

response and provided a formal statement. It was a statement of denial, although there are many inconsistencies in the statement[.]

Trial counsel stipulated to the facts recounted by the State. Trial counsel maintained that he was prepared for trial, which was to occur that afternoon. Trial counsel also noted that "after heavily negotiating this with [the Petitioner], who consulted with [trial counsel] and also his mother," the Petitioner agreed to "this negotiated settlement."

The trial court then engaged the twenty-year-old Petitioner in a plea colloquy. The Petitioner informed the trial court that he had completed the eleventh grade and had reviewed his "rights to trial" with his attorney. The trial court then advised the Petitioner that he was to answer the trial court's questions truthfully or otherwise he could be charged with perjury. After affirming that he would tell the truth, the Petitioner indicated that he understood that by pleading guilty he was waiving his right to a jury trial, at which he could cross-examine the State's witnesses, present witnesses in his defense, and opt to remain silent. The Petitioner also said that he understood what the State would have had to prove "on each of these charges" if he proceeded to trial.

The Petitioner maintained that he had no prior felony convictions. The trial court then explained the potential punishments that the Petitioner faced on each of the charges if he was found guilty by a jury, including that the employing a firearm offense would require consecutive service, and the Petitioner affirmed his understanding. The Petitioner acknowledged that, by pleading guilty, he was giving up his right to an appeal. He also said that he understood his guilty-pleaded conviction would be on his permanent record and could be used to enhance sentences if he had any convictions in the future.

The Petitioner said that no one had forced or pressured him into pleading guilty. He stated his awareness that, by entering this plea, he would never be able to possess a gun and that, if caught with a gun, he could be convicted of a crime. Moreover, the Petitioner said that he understood that, if he was later charged with first degree murder, his guilty-pleaded conviction could be used as an aggravating circumstance to seek the death penalty.

The Petitioner also averred that he was satisfied with his attorney's performance. He had no questions about his plea agreement or the rights he was waiving. The trial court found that the Petitioner pled guilty "freely, knowingly, voluntarily, and intelligently." The trial court accepted the Petitioner's guilty plea and imposed a sentence in accordance with the plea agreement.

On July 20, 2016,[1] the Petitioner filed a pro se petition seeking post-conviction relief, which was later amended following the appointment of counsel. In the amended petition, the Petitioner alleged that he received ineffective assistance because trial counsel (1) "failed to adequately investigate, or prepare for trial, develop defenses, speak to witnesses, file motions, or meet with the [Petitioner] to prepare for trial"; (2) "failed to object to raise a statutory claim with respect to charging him with attempted murder by using a firearm and employing a firearm in the commission of the same offense"; and (3) coerced him into pleading guilty by providing incorrect advice. The Petitioner concluded that, but for trial "counsel's ineffective representation," he "would have received a greatly reduced sentence." The post-conviction court held evidentiary hearings on February 10th and March 9th of 2017.

The Petitioner testified that his "basis for" post-conviction relief was "ineffective counsel, double jeopardy[,] and inconsistent statements of [his] victim." According to the Petitioner, trial counsel received this case from the Public Defender's Office on June 24, 2014, almost thirteen months before it was set for trial. The Petitioner asserted that trial counsel only met with him three times during that thirteen months and that the meetings lasted for five minutes or less. The Petitioner claimed that he asked trial counsel for a "discovery packet" and to have several witnesses subpoenaed. Regarding the filing of motions, the Petitioner maintained that trial counsel ignored his requests to file a "motion for bail reduction, motion for suppression of evidence, motion for discovery, motion for dismissal[,] and motion for alibi defense." The Petitioner further asserted that trial counsel did not investigate the case and did not discuss trial strategy with him prior to trial. When asked "[i]f trial counsel had done those things that [the Petitioner] wanted him to do that [trial counsel] didn't, how would that have helped [the Petitioner]," the Petitioner replied, "I would have . . . gone home in 2015. I would have beat my case on impeachment of the victim [and an] alibi defense."

Regarding inconsistent statements made by the victim, the Petitioner averred that the victim first told the police that "he was walking and getting into his vehicle" when he was shot and that later, at the preliminary hearing, the victim said that "he never got outside his vehicle" before getting shot. The Petitioner further asserted that the victim said at the preliminary hearing that only the Petitioner was present on the scene of the shooting. The Petitioner then referenced a narrative by a Memphis police officer that was a part of the Petitioner's "discovery packet." In the narrative, admitted as an exhibit, the officer stated "that an unknown male black said that he saw the victim standing outside his vehicle . . . speaking with [two] male blacks"; that "[t]he unknown male black witness

---

[1] Generally, "a judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence." State v. Green, 106 S.W.3d 646, 650 (Tenn. 2003). On appeal, the State acknowledges that the Petitioner's guilty plea did not become final until thirty days after July 13, 2015, and that his petition is timely filed. We agree.

said that he briefly turned his head away and heard several gunshots", and that, "[w]hen he turned[,] around he saw the victim driving north bound on Dogwood." In addition, according to the Petitioner, the victim claimed that "he was coming to serve [the Petitioner] drugs," but no drugs were found in the victim's car.

The Petitioner stated that, although he asked trial counsel for discovery, "[e]verything that he got was from [his] old attorney." He acknowledged that he had the affidavit of complaint and the narrative report in his possession but claimed, "I don't have . . . nothing that I asked for and I filed for and still didn't get it." According to the Petitioner, "new stuff ha[d] come about." The Petitioner then referenced another statement made by the victim to the Memphis Police Department ("MPD"), wherein, according to the Petitioner, the victim identified the Petitioner but said that he did not know the Petitioner's last name. The Petitioner asserted that he had only one of the three inconsistent statements in his possession, that being the narrative report, and that he did not receive either a copy of the preliminary hearing or the victim's MPD statement. The Petitioner maintained that his original attorney had shown him those two statements but failed to give him a copy of them before she withdrew.

Regarding specific motions the Petitioner wanted filed, the Petitioner alleged that double jeopardy principles protected him from being charged with attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony. According to the Petitioner, although trial counsel sought to get the Petitioner a deal on solely the aggravated assault charge, trial counsel was unsuccessful. The Petitioner testified that, prior to trial, trial counsel was only able to secure a deal of fifteen years for attempted first degree murder and six years each for aggravated assault and employing a firearm. The Petitioner asserted that it was double jeopardy when the State "offered [him] time on all three."

The Petitioner claimed that, if he had been "appropriately represented," he "would have either got a much shorter sentence, or acquitted" of the charges. When asked how he "would . . . have gotten a shorter sentence," the Petitioner responded, "A shorter sentence, either way they would have came [sic] at me . . . , because there's three lesser included offense[s] that I could have looked at[.]" In conclusion, the Petitioner was asked if there was "anything else [he] would like the [j]udge to know about [his] post-conviction," and the Petitioner stated that he wanted the "MPD officer," "the detectives of felony response," his six alibi witnesses, trial counsel, and the victim subpoenaed to court.

On cross-examination, the Petitioner acknowledged that the victim had identified him as the shooter in the victim's original police statement, at the preliminary hearing, and in a lineup. The Petitioner explained, "Because he knows me, he had just seen me, probably an hour before."

The Petitioner was also asked about proceedings that occurred in December 2014, from which trial counsel was absent. The Petitioner agreed that he indicated to the trial court on this date that he "was leaning towards trial, but [he] didn't really want a trial, but [he] didn't want the offer either[.]" The case was then set for trial.

When asked why he then decided to plea just before trial was to begin, the Petitioner explained, "Because [trial counsel] wasn't even back there thirty seconds and he said, . . . you know you sign for the fifteen years everything else is dropped, they've got a dead on case on you." The Petitioner claimed that he still wanted to go to trial and that he continued to ask trial counsel to file motions, but trial counsel would not comply. The Petitioner acknowledged that he told the trial judge that he was satisfied with trial counsel's representation at the plea submission hearing, but he claimed that he only did so relying on incorrect advice from trial counsel. The Petitioner asserted that trial counsel counseled him on how to answer the trial judge's questions during the plea colloquy. However, the Petitioner claimed that he wanted to enter an Alford plea[2] instead because he was innocent, although he never mentioned this at the plea submission hearing. When asked if he recalled speaking with his mother prior to accepting the guilty plea, the Petitioner said that this conversation was short and that trial counsel had already spoken with her. According to the Petitioner, his mother encouraged him to take the plea because trial counsel was "a bad lawyer."

The Petitioner acknowledged that he did have a juvenile record, which included two aggravated burglaries and a robbery. The Petitioner agreed that those offenses could have been used to enhance his sentence.

The Petitioner continued to claim that there was a significant difference between the victim's saying that he was walking to the car before the shooting began and that he was sitting in the car when the shooting happened. In addition, the Petitioner confirmed that he told police that the victim had been at his house earlier on the day of the shooting and that the victim had sold him some marijuana. The Petitioner then acknowledged that the victim would have known where he lived based upon this prior transaction. The

---

[2] The Tennessee Supreme Court has explained an Alford plea as follows:

> Although uncommon, criminal defendants also may plead guilty while maintaining that they did not commit the crime charged. Such pleas are often referred to as "Alford pleas" based on the United States Supreme Court case, North Carolina v. Alford, 400 U.S. 25, 91 (1970). In Alford, our nation's high court held that a defendant who professed his innocence could nonetheless enter a constitutionally valid guilty plea when the defendant "intelligently concludes that his interests require entry of a guilty plea." Id. at 37.

Frazier v. State, 495 S.W.3d 246, 250 n.1 (Tenn. 2016).

Petitioner also asserted that he told the police that he was at home with his mother and other family members when the shooting occurred.

The Petitioner's mother, Nicole Johnson, testified. She stated that the Petitioner did not "leave the house that day." Ms. Johnson relayed that she picked up the Petitioner from the Greyhound Station the night before, that he had only been in Memphis for less than a day, and that, on the evening of October 6, 2013, she fixed dinner for the Petitioner, his "younger siblings," her sister, and some of her sister's friends. According to Ms. Johnson, she informed trial counsel that the Petitioner was home with her at the time of the shooting, and she asserted that she would have been willing to testify for him. Ms. Johnson said that she spoke with trial counsel only twice before the Petitioner's guilty plea, once in person and once over the phone. She maintained that she did not have "too much communication" with trial counsel. Ms. Johnson asserted that she was not aware of the nature of the Petitioner's charges until the day the Petitioner pled guilty. However, Ms. Johnson agreed that, after speaking with trial counsel, she spoke with the Petitioner alone and advised the Petitioner to accept the State's offer of fifteen years. In addition, she stated that she did so because she "was just kind of relieved that it wasn't a life situation" for the Petitioner and "that he would still be able to get out and have a productive life."

In response to the Petitioner's claim that trial counsel rarely visited him, trial counsel testified that he met with the Petitioner "a few times, including one lengthy time for trial prep[aration]." Trial counsel further averred that they "discussed [the Petitioner's] case in detail and trial strategies." When asked about his investigation, trial counsel replied that he took over the case from the Public Defender's Office and that "they had done a preliminary hearing, obtained discovery and had done an investigation prior to this," so by the time he took over "everything was fairly complete." Trial counsel continued, "[I]t just needed to be looked at, discussed, negotiated and then set for trial, if negotiations failed." Trial counsel averred that he investigated the Petitioner's case, reviewed discovery, and was "excited at the prospect" of going to trial.

Regarding potential witnesses, trial counsel testified that he "had a lengthy conversation" with the Petitioner's mother. In addition, trial counsel did not recall the Petitioner's asking him to file any motions. According to trial counsel, "discovery had already been filed," and he "did not see any grounds in a motion to suppress, or what needed to be suppressed[.]" While trial counsel did not remember the Petitioner's wanting him "to file motions concerning the constitutionality of the charges against him[,]" trial counsel opined that there was no merit to such a motion. When asked about the inconsistencies in the victim's statements, trial counsel thought that those "did not seem particularly significant" given that the victim was shot multiple times regardless of the victim's position when he was shot.

-7-

Trial counsel confirmed that the Petitioner told him "that he was with his family at the time" of the shooting and that the Petitioner's mother was present at trial "to support him and [was] willing to testify." Regarding why he did not advise the Petitioner to go to trial given that the Petitioner had an alibi defense, trial counsel said, "Well, mothers are never the greatest witness[es], because she obviously has an interest in saving her son and keeping him out of jail. So she has an incentive to do anything to protect him." Trial counsel also confirmed that there were other credibility issues because the Petitioner "actually put himself in contact with the victim and near the scene, at or near the time of the murder[,] and additionally, . . . the victim knew where the [Petitioner] lived[.]"

Trial counsel testified that he did try to get the Petitioner an offer for aggravated assault only, but he was unsuccessful. Trial counsel asserted "that the State had a very strong case[.]" "The most helpful thing," in trial counsel's opinion, was "that the victim in this case was very clearly not a good guy," being a member of a gang and a drug dealer, and this information would have "impugn[ed] his credibility" with the jury. Trial counsel noted that "on the trial date[,] the offer got a lot better," "get[ting] rid of the gun charge [and] reducing six years to the sentence," for an "ultimate settlement" of fifteen years. Trial counsel continued, "I told him that was a very good idea and things were not likely to get any better. But, I let him make the decision" about whether to plead guilty or go to trial. Trial counsel also maintained that he based his advice to accept the fifteen-year plea deal on the other evidence in the case, including that the Petitioner had given a statement "put[ting] himself with the victim prior to the incident" and that "the victim had been unwavering in his identification" of the Petitioner. Trial counsel confirmed that the Petitioner's mother spoke with the Petitioner for about "twenty minutes" before the plea submission hearing, and trial counsel believed that the Petitioner's mother "was much more persuasive" in getting the Petitioner to accept the offer. According to trial counsel, the Petitioner never gave him any indication that he was unhappy with trial counsel's representation.

The post-conviction court thereafter denied the Petitioner relief by written order filed on June 6, 2017, concluding that the Petitioner had failed to establish his claims of ineffective assistance of counsel. In denying the Petitioner's claims, the trial court reasoned as follows:

> As reflected in the record, an investigation was conducted by the original defense team in this case. Trial counsel . . . met with [the] Petitioner to discuss his case several times. [Trial counsel] looked at the discovery and the possible defenses and determined that there were no other reasonable grounds for filing a motion to suppress or any other motion. [Trial counsel] even met with [the] Petitioner's mother (his potential alibi witness) and discussed the case with her. [Trial counsel] also negotiated with the State

-8-

and presented [the] Petitioner with an offer of fifteen years at eighty-five percent—which he accepted when he pled guilty.

This timely appeal followed.

## ANALYSIS

On appeal, the Petitioner raises the same issues as those in his amended petition and submits that the post-conviction court erred when it denied him relief. The State responds that the post-conviction court correctly concluded that the Petitioner failed to carry his burden of proving that trial counsel was ineffective.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to

tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

In the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

First, the Petitioner contends that trial counsel "failed to adequately investigate, or prepare for trial, develop defenses, speak to witnesses, file motions, or meet with the [Petitioner] to prepare for trial." However, trial counsel's testimony from the post-conviction hearing belies this contention. Trial counsel testified that, when he received the Petitioner's case from the Public Defender's Office, "everything was fairly complete." Trial counsel affirmed that he had reviewed the information provided to him and that he was prepared for trial, even "excited at the prospect." Trial counsel further stated that, during his review of the case, he learned that the victim was not a "good guy,"

being a drug dealer and a gang member, and he could use this information to attack the victim's credibility in front of the jury. According to trial counsel, he met with the Petitioner "a few times, including one lengthy time for trial prep[aration,]" and they "discussed [the Petitioner's] case in detail and trial strategies." In addition, the inconsistencies in the victim's statement were not "particularly significant," in trial counsel's opinion. The post-conviction court clearly credited trial counsel's testimony over the Petitioner's, which is a determination we will not disturb on appeal. See Fields, 40 S.W.3d at 456.

Regarding the presentation of an alibi defense, trial counsel said that he interviewed the Petitioner's mother but that, after speaking with her, he did not believe she would make a credible witness. Trial counsel felt that her credibility was questionable in light of her natural bias in favor of her son, the Petitioner. Furthermore, trial counsel did not think that her testimony would overcome the Petitioner's statement that he was in the victim's company shortly before the shooting. Trial counsel had investigated the Petitioner's alleged alibi and was adequately prepared. See Hellard, 629 S.W.2d at 9.

In addition, trial counsel did not recall the Petitioner's requesting that he file any motions, and in trial counsel's opinion, there was no legal basis for a motion to suppress or a motion to challenge the charges on double jeopardy grounds. We agree. The Petitioner did not identify what evidence should have been suppressed or what legal grounds would have supported suppression. There is also no support for the Petitioner's belief that trial counsel should have raised "a statutory claim with respect to charging [the Petitioner] with attempted murder by using a firearm and employing a firearm in the commission of the same offense." The employment of a firearm is not an essential element of attempted first degree murder. See State v. John Armstrong, No. W2016-00082-CCA-R3-CD, 2016 WL 5210869, at *2 (Tenn. Crim. App. Sept. 20, 2016) ("Possession of a firearm is not an essential element of attempted first degree murder, as attempted first degree murder may be committed without the possession of a firearm.") (citation omitted).

The Petitioner also claimed that trial counsel coerced him into pleading guilty by providing him with incorrect advice. Trial counsel testified that he advised the Petitioner to accept the fifteen-year offer but that the ultimate decision was the Petitioner's. Trial counsel said that he counseled the Petitioner to take the deal because the State had a strong case, which included the Petitioner's statement placing himself with the victim just before the shooting and the victim's multiple statements identifying the Petitioner as the shooter. Moreover, the Petitioner was allowed to speak with his mother before he made the decision to accept the plea, and she also advised him to accept the plea deal.

-11-

According to trial counsel, the Petitioner never gave him any indication that he was unhappy with trial counsel's representation.

The Petitioner argued that, but for trial "counsel's ineffective representation," he "would have received a greatly reduced sentence." The Petitioner asserted that he would have received "[a] shorter sentence" because there were "three lesser included offense[s] that [he] could have looked at" had trial counsel better represented him. However, he has provided no further factual support or legal authority for his claim. See Alvin Waller, Jr. v. State, No. W2016-00265-CCA-R3-PC, 2016 WL 6994984, at *5 (Tenn. Crim. App. Nov. 30, 2016) (finding no merit to the petitioner's summary claim of prejudice that he "would have been acquitted of the kidnapping charge [had] the appropriate jury instructions being given" because the petitioner failed to provide "further factual support or legal authority" in support). And, although the Petitioner questioned counsel's ability to adequately represent him, trial counsel was able to negotiate the State down from an initial offer of fifteen years on the attempted murder charge and six years each on the aggravated assault and employing a firearm offenses to the offer ultimately agreed to, fifteen years at eighty-five percent on the attempted first degree murder offense only.

Finally, at the plea submission hearing, the Petitioner indicated his understanding of the plea agreement and affirmed his desire to plead guilty to the charge. He also stated that he was satisfied with counsel's representation. "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admission of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements." Alfonso C. Camacho v. State, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009). Accordingly, the Petitioner has failed to prove that trial counsel was ineffective such that his pleas were rendered unknowing and involuntary. The Petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-12-